SMITH–JOHNSON STEAMSHIP CORP.

v.

The UNITED STATES.

PACIFIC FAR EAST LINE, Inc.,

v.

The UNITED STATES.

BLACK DIAMOND STEAMSHIP CORP.

v.

The UNITED STATES.

Nos. 98–55, 262–55, 314–55.

United States Court of Claims.
March 6, 1956.

Writ of Certiorari Denied
June 11, 1956.
See 76 S.Ct. 1047.

Arthur M. Becker, Washington, D. C., for plaintiff in case No. 98–55; Melvin Spaeth, Gerald B. Greenwald, and Becker & Maguire, Washington, D. C., were on the briefs.

J. Franklin Fort, Washington, D. C., for plaintiff in case No. 262–55; Radner, Zito, Kominers & Fort, and Israel Convisser, Washington, D. C., were on the briefs.

George F. Galland, Washington, D. C., for plaintiff in case No. 314–55; William J. Lippman, Robert N. Kharasch, and Galland & Kharasch, Washington, D. C., were on the briefs.

Leavenworth Colby, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff alleges in the Smith-Johnson Steamship Corporation case that the defendant exacted from it for the hire of certain vessels more than was authorized by the Merchant Ship Sales Act of 1946, 60 Stat. 41, 50 U.S.C.A.Appendix, § 1735 et seq., and the Merchant Marine Act of 1936, 49 Stat. 1985, 46 U.S.C.A. § 1101 et seq. It sues for the excess. Defendant in its answer sets up the special defense that this court lacks jurisdiction of the subject matter, because, it says, plaintiff's cause of action is on the contract for the hire of the vessels and is, therefore, maritime in nature, of which

actions the admiralty courts have exclusive jurisdiction. Plaintiff says its action is on the statute and it moves to strike defendant's special defense.

The Merchant Ship Sales Act of 1946 provided for the charter of war-built vessels. Section 5(b) authorized the United States Maritime Commission to fix the charter hire for vessels at such rates as the Commission should determine to be consistent with the policy of the Act. Plaintiff says that, in fixing the charter hire for the vessels chartered to it, the Commission went contrary to the policy of the Act in that it exacted from it a stated hire and in addition percentages of its profits on the voyages of the vessels in excess of the percentages authorize by the Act.

Section 5(c) of the Act incorporated section 709(a) of the Merchant Marine Act of 1936, 49 Stat. 1985, 2010, which provided:

"Every charter made by the Commission * * * shall provide that whenever, at the end of any calendar year subsequent to the execution of such charter, the cumulative net voyage profits (after payment of the charter hire reserved in the charter and payment of the charterer's fair and reasonable overhead expenses applicable to operation of the chartered vessels) shall exceed 10 per centum per annum on the charterer's capital necessarily employed in the business of such chartered vessels, the charterer shall pay over to the Commission, as additional charter hire, one-half of such cumulative net voyage profit in excess of 10 per centum per annum: *Provided,* That the cumulative net profit so accounted for shall not be included in any calculation of cumulative net profit in subsequent years."

The charter agreement tendered plaintiff by the Maritime Commission provided for a basic charter hire and also for additional charter hire as follows:

"Clause 13. *Additional Charter Hire.* If at the end of the calendar year 1946, or any subsequent calendar year or at the termination of this Agreement, the cumulative net voyage profit (after the payment of the basic charter hire hereinabove specified and payment of the charterer's fair and reasonable overhead expenses applicable to operation of the vessels) shall exceed 10 per centum per annum on the charterer's capital necessarily employed in the business of the vessels (all as hereinafter defined), the charterer shall pay over to the owner at Washington, D. C., within 30 days after the end of such year or other period, as additional charter hire for such year or other period, an amount equal to the percentages of such cumulative net voyage profit in excess of 10 per centum per annum on such capital computed in accordance with the following table (but such cumulative net profit so accounted for shall not be included in any calculation of cumulative net profit in any subsequent year or period):

"Cumulative net voyage profit (in excess of 10% per annum on capital necessarily employed) not in excess of $100 per day—50%.

"Cumulative net voyage profit (in excess of 10% per annum on capital necessarily employed) in excess of $100 per day but not in excess of $300 per day—75% on such excess over $100 per day.

"Cumulative net voyage profit (in excess of 10% per annum on capital necessarily employed) in excess of $300 per day—90% on such excess over $300 per day.

"The Charterer agrees to make preliminary payments to the Owner on account of such additional charter hire and on account of any additional charter hire accrued under any War Shipping Administration Form 203 "WARSHIPDEMISEOUT" charter (prior to the times of payment provided for above in such WARSHIPDEMISEOUT charter-

ed) at such times and in such manner and amounts as may be required by the Owner; provided, however, that such payment of additional charter hire shall be deemed to be preliminary and subject to adjustment either at the time of the rendition of preliminary statements or upon the completion of each final audit by the Owner, at which times such payments will be made to the Owner as such preliminary statements or final audit may show to be due, or such overpayments refunded to the Charterer as may be required."

Plaintiff says this charter agreement exacted a percentage of its profits in excess of that authorized by law. Nevertheless, the charter agreement was executed and eight vessels were delivered to plaintiff. While the charter agreement was in effect plaintiff made preliminary payments of additional charter hire to defendant, pursuant to clause 13 of the agreement, quoted above, totalling the sum of $613,395.32. By final audit completed on February 4, 1955, defendant determined that, at the time of the audit, a total of $616,063.04 had accrued to defendant as additional charter hire under the charter agreement, which was paid on demand. Plaintiff seeks to recover $231,773.81 of the amount paid defendant as additional charter hire, on the ground that the contract exacted this much more than was authorized by law.

The issue presented is whether plaintiff's claim is on the contract, and, therefore, maritime in nature, of which the district courts have exclusive jurisdiction, or is a claim based on the statute, of which this court is given jurisdiction by section 1491 of Title 28 U.S.C.

■■■ Defendant says the action is maritime under both the Public Vessels Act, 46 U.S.C.A. § 781 et seq., and the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. The Public Vessels Act is not applicable because the vessels involved herein are not public vessels; only the Suits in Admiralty Act is pertinent.

This Act confers exclusive jurisdiction on the district courts only in situations where, if the vessels were privately owned, a proceeding in admiralty could be maintained. D. C. Andrews & Co. v. United States, 124 F.Supp. 362, 129 Ct. Cl. 574. If plaintiff were basing its claim on the charter agreement, the action would clearly be maritime in nature and maintainable in admiralty; but plaintiff does not base its claim on the charter agreement, but on the ground that the agreement exacted more than could lawfully be exacted. The contract has been performed according to its terms. No cause of action on the contract exists. Plaintiff's claim can only be grounded on the fact that the contract required more than the law authorized. Hence, its action is based on the statute, and this court, therefore, has jurisdiction.

Defendant relies upon Krauss Bros. Lumber Co. v. Dimon S. S. Corp., 290 U. S. 117, 54 S.Ct. 105, 78 L.Ed. 216, but in this case, plaintiff's claim was based on the contract, and not on the ground that the contract had exacted more than the law allowed. Plaintiff alleged that it had paid more for the carriage of freight than was due under the contract and sought to recover the amount of the overpayment. Admiralty had jurisdiction because the suit was on a maritime contract. The case is not in point on the question before us.

In Archawski v. Hanioti, 223 F.2d 406, the Court of Appeals for the Second Circuit said that an action by prospective passengers to recover money paid for passage on a vessel that never sailed was a common law action of *indebitatus assumpsit*, of which the admirality courts had no jurisdiction. The Supreme Court granted certiorari, 350 U.S. 872, 76 S.Ct. 120, and it may be it will hold that the action was for a breach of a maritime contract, of which the admiralty courts have jurisdiction; but, even so, such a decision could not affect the decision of this case, since we think this is a suit based not on a contract, either maritime or at common law, but on a statute.

The Second Circuit, in an opinion by a pre-eminent jurist, decided Sword Line, Inc., v. United States, 228 F.2d 344, in which it took a view contrary to what we have expressed. It said in effect that the parties are presumed to have agreed on a hire for the vessels no greater than the law allowed and, hence, that the suit for excessive exaction was a suit on the contract, of which the courts of admiralty have jurisdiction. But no such presumption can be indulged in the case at bar, because it is contrary to the facts. The parties in fact did agree on a hire greater than the law allowed—taking the allegations of the petition to be true.

If the Government is not entitled to retain the excess, it is not because plaintiff did not agree to pay it, but because the statute did not authorize the exaction of so much. If plaintiff is entitled to recover, it is because its rights under the statute have been violated, not its rights under the contract.

For the reasons stated, we conclude that the plaintiff's cause of action is non-maritime in nature, and is one which could not be maintained in a court of admiralty. Accordingly, the claim falls within the jurisdiction of this court, and plaintiff's motion to strike defendant's special defense of want of jurisdiction is granted.

Defendant, in cases Nos. 262–55 and 314–55, has moved the court to dismiss for lack of jurisdiction. Relative to the question of jurisdiction, the causes of action asserted in the petitions of the respective plaintiffs in these cases are identical to the cause of action asserted in Smith-Johnson Steamship Corporation v. United States, No. 98–55. For reasons stated above, we hold that this court has jurisdiction over the subject matter of these causes of action. Therefore, defendant's motions to dismiss for lack of jurisdiction must be denied.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur