## UNITED STATES *v.* UNITED CONTINENTAL TUNA CORP.

No. 74-869.  Argued November 3, 1975—Decided March 30, 1976

MARSHALL, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. STEWART, J., filed a dissenting opinion, *post*, p. 182. STEVENS, J., took no part in the consideration or decision of the case.

*Robert E. Kopp* argued the cause for the United States. With him on the briefs were *Solicitor General Bork, Assistant Attorney General Lee,* and *Acting Assistant Attorney General Jaffe.*

*Francis J. MacLaughlin* argued the cause and filed a brief for respondent.

MR. JUSTICE MARSHALL delivered the opinion of the Court.

Respondent, a Philippine corporation owned largely by Americans, brought this suit against the United States in the United States District Court for the Central District of California, alleging jurisdiction under the Suits in Admiralty Act, 41 Stat. 525, as amended, 46 U. S. C. § 741 *et seq.*, and the Public Vessels Act, 43 Stat. 1112, as amended, 46 U. S. C. § 781 *et seq.* It sought recovery

for damages resulting from the sinking of its fishing vessel, the MV *Orient,* after a collision with the U. S. S. *Parsons,* a naval destroyer of the United States.

Upon the United States' motion for summary judgment, the District Court held that since the naval destroyer was a "public vessel of the United States," the suit was governed by the provisions of the Public Vessels Act. See 46 U. S. C. § 781. In particular, the court held that respondent was subject to the Act's reciprocity provision, which bars any suit by a foreign national under the Act unless it appears that his government, "under similar circumstances, allows nationals of the United States to sue in its courts." § 785. Finding no such reciprocity, the District Court dismissed the complaint.

The Court of Appeals for the Ninth Circuit reversed on the ground that respondent's action, although involving a public vessel, is maintainable under the Suits in Admiralty Act without reference to the reciprocity provision of the Public Vessels Act. 499 F. 2d 774 (1974). We granted certiorari, 420 U. S. 971 (1975), and we now reverse.

I

It is undisputed that before 1960 suits involving public vessels could not be maintained under the Suits in Admiralty Act. The Act then authorized suits involving vessels owned by, possessed by, or operated by or for the United States as follows:

> "[I]n cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States . . . *provided that such vessel is employed as a merchant ves-*

*sel . . . ."*  41 Stat. 525, 46 U. S. C. § 742 (1958 ed.)
(emphasis added).[1]

In 1960, however, Congress amended this provision of the
Suits in Admiralty Act by deleting the proviso, italicized
above, that the vessel must be "employed as a merchant
vessel." 74 Stat. 912. Reading the amended provision
literally, the Court of Appeals held that suits involving
public vessels could now be brought under the Suits in
Admiralty Act, free from the restrictions imposed by the
Public Vessels Act. The court reached this result in spite
of its acknowledgment that "such a conclusion permits
the [Public Vessels Act's] reciprocity provision to be cir-
cumvented in a manner neither explicitly authorized nor
perhaps contemplated by Congress." 499 F. 2d, at 778.

The Court of Appeals' result would permit circumven-
tion of not only the reciprocity requirement, but also
several other significant limitations imposed upon suits
brought under the Public Vessels Act. Under 46 U. S. C.
§ 784, for example, officers and members of the crew of a
public vessel may not be subpoenaed in connection with
any suit authorized by the Public Vessels Act without
the consent of the Secretary of the Department, the com-
manding officer, or certain other persons. In time of
war, the Secretary of the Navy can obtain a stay of any
suit brought under the Public Vessels Act when it ap-
pears that prosecution of the suit would tend to interfere
with naval operations. 10 U. S. C. §§ 7721–7730. And
under the Public Vessels Act, unlike under the Suits in
Admiralty Act, interest on judgments does not accrue
prior to the time of judgment. Compare 46 U. S. C.
§ 782 with 46 U. S. C. § 745.

---

[1] We need not concern ourselves in this case with the definitions
of the terms "merchant vessel" and "public vessel." It suffices
to say that the terms are mutually exclusive, and that the naval
destroyer in this case is beyond question a "public vessel."

Under the Court of Appeals' interpretation of the 1960 amendment to the Suits in Admiralty Act, circumvention of these restrictive provisions of the Public Vessels Act would not be limited to a handful of cases. Since there is virtually no reason for a litigant to prefer to have his suit governed by the provisions of the Public Vessels Act,[2] the import of the Court of Appeals' interpretation is to render the restrictive provisions of the Public Vessels Act ineffectual in practically every case to which they would otherwise have application. If Congress had intended that result, it might just as well have repealed the Public Vessels Act altogether.

The Public Vessels Act was not amended in 1960, and, as the Court of Appeals recognized, the 1960 amendment to the Suits in Admiralty Act contains no language expressly permitting claims previously governed by the Public Vessels Act to be brought under the Suits in Admiralty Act, free from the restrictive provisions of the Public Vessels Act. What amounts to the effective repeal of those provisions is urged as a matter of implication. It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored. See, *e. g., Regional Rail Reorganization Act Cases,* 419 U. S. 102, 133 (1974); *Amell* v. *United States,* 384 U. S. 158, 165–166 (1966); *Silver* v. *New York Stock Exchange,*

---

[2] The only apparent advantage to bringing suit under the Public Vessels Act lies in its broader venue provision. Both the Suits in Admiralty Act and the Public Vessels Act provide venue in the district in which the vessel or cargo is found, and in the district in which any plaintiff resides or has a place of business (under the Suits in Admiralty Act it must be the principal place of business in the United States). 46 U. S. C. §§ 742, 782. But the Public Vessels Act provides further that if there is no such district, suit may be brought in any district in the United States. 46 U. S. C. § 782.

373 U. S. 341, 357 (1963); *United States* v. *Borden Co.,* 308 U. S. 188, 198–199 (1939). The principle carries special weight when we are urged to find that a specific statute has been repealed by a more general one. See, *e. g., Morton* v. *Mancari,* 417 U. S. 535, 550–551 (1974); *Bulova Watch Co.* v. *United States,* 365 U. S. 753, 758 (1961); *Rodgers* v. *United States,* 185 U. S. 83, 87–89 (1902).

To be sure, the principle of these cases is not precisely applicable in this case—for here the argument is not that the Public Vessels Act can no longer have application to a particular set of facts, but simply that its terms can be evaded at will by asserting jurisdiction under another statute. We should, however, be as hesitant to infer that Congress intended to authorize evasion of a statute at will as we are to infer that Congress intended to narrow the scope of a statute. Both types of "repeal"—effective and actual—involve the compromise or abandonment of previously articulated policies, and we would normally expect some expression by Congress that such results are intended. Indeed, the expectation that there would be some expression of an intent to "repeal" is particularly strong in a case like this one, in which the "repeal" would extend to virtually every case to which the statute had application.

The ultimate question in this case is whether Congress intended, by the deletion of the "employed as a merchant vessel" proviso from the Suits in Admiralty Act, to authorize the wholesale evasion of the restrictions specifically imposed by the Public Vessels Act on suits for damages caused by public vessels. An examination of the history of the Suits in Admiralty Act, the Public Vessels Act, and, in particular, the 1960 amendment to the Suits in Admiralty Act, indicates quite clearly that Congress had no such intent.

## II

### A

The history of the Suits in Admiralty Act and the Public Vessels Act has been the subject of the Court's attention on several prior occasions. See *Canadian Aviator, Ltd.* v. *United States,* 324 U. S. 215, 218–225 (1945); *American Stevedores, Inc.* v. *Porello,* 330 U. S. 446, 450–454 (1947); *Johansen* v. *United States,* 343 U. S. 427, 432–434 (1952); *Amell* v. *United States, supra,* at 164–166. The history is quite clear and, for our purposes, can be stated briefly.

Prior to 1916, the doctrine of sovereign immunity barred any suit by a private owner whose vessel was damaged by a vessel owned or operated by the United States. Recognizing the inequities of denying recovery to private owners and the difficulties inherent in attempting to grant relief to deserving private owners through private Acts of Congress, Congress provided in the Shipping Act, 1916, that Shipping Board vessels employed as merchant vessels were subject to "all laws, regulations, and liabilities governing merchant vessels." 39 Stat. 730, 46 U. S. C. § 808. In *The Lake Monroe,* 250 U. S. 246 (1919), this Court held that the Shipping Act had subjected all Shipping Board merchant vessels to proceedings *in rem* in admiralty, including arrest and seizure. Congress, concerned that the arrest and seizure of Shipping Board merchant vessels would occasion unnecessary delay and expense, promptly responded to the *Lake Monroe* decision by enacting the Suits in Admiralty Act.[3] The Act prohibited the arrest or seizure of any vessel owned by, possessed by, or operated by or for the United States. 46 U. S. C. § 741. In the place of an

---

[3] See S. Rep. No. 223, 66th Cong., 1st Sess. (1919); H. R. Rep. No. 497, 66th Cong., 2d Sess. (1919).

*in rem* proceeding, the Act authorized a libel *in personam* in cases involving such vessels, if such a proceeding could have been maintained had the vessel been a private vessel, and "provided that such vessel is employed as a merchant vessel." 41 Stat. 525, 46 U. S. C. § 742 (1958 ed.). Significantly, Congress was urged to include in the Suits in Admiralty Act authorization for suits against the United States for damages caused by public vessels, but the suggestion was rejected in committee as a "radical change" in policy that might "materially delay passage" of the Act.[4]

Until 1925 the only recourse for the owner of a vessel or cargo damaged by a public vessel was to apply to Congress for a private bill. In that year, Congress enacted the Public Vessels Act, which authorized a libel *in personam* against the United States "for damages caused by a public vessel of the United States." 46 U. S. C. § 781. The Act provided that suits involving public vessels "shall be subject to and proceed in accordance with the provisions of [the Suits in Admiralty Act] or any amendment thereof, insofar as the same are not inconsistent herewith . . . ." § 782. Some of the inconsistencies lay in the Public Vessels Act's provisions, referred to above, restricting subpoenas to officers and crew members of a public vessel, barring recovery of prejudgment interest, and imposing a requirement of reciprocity. Each of these provisions must be assumed to have reflected deliberate policy choices by Congress. In particular, the notion of reciprocity was central to the scheme enacted by Congress. One of the spurs to enactment of the Public Vessels Act was Congress' recognition that the principal maritime nations, notably England, France, and Germany, already permitted their nationals

---

[4] *Id.*, at 4.

and foreigners to bring suit for damages caused by public vessels.[5] And while the debates on the Public Vessels Act were sparse, the Act's requirement of reciprocity was specifically mentioned on the House floor in response to a question whether the Act gave foreign nationals the same rights as citizens to bring suit.[6]

## B

The 1960 amendment to the Suits in Admiralty Act, which formed the basis of the Court of Appeals' decision, was an outgrowth of severe jurisdictional problems facing the plaintiff with a maritime claim against the United States. Both the Suits in Admiralty Act and the Public Vessels Act authorized suits on the admiralty side of the district courts, and were viewed as providing the exclusive remedy for claims within their coverage. See 46 U. S. C. § 745; *Johnson* v. *United States Shipping Board Emergency Fleet Corp.*, 280 U. S. 320 (1930); *Aliotti* v. *United States*, 221 F. 2d 598 (CA9 1955). But these Acts were not generally interpreted to encompass all actionable maritime claims against the United States. Maritime tort claims deemed beyond the reach of both Acts could be brought only on the law side of the district courts under the Federal Tort Claims Act. 28 U. S. C. §§ 1346 (b), 2671 *et seq.* More importantly for our purposes, contract claims not encompassed by either Act fell within the Tucker Act, which lodged exclusive jurisdiction in the Court of Claims for claims exceeding $10,000. 28 U. S. C. §§ 1346 (a)(2), 1491.

A plaintiff with a contract claim against the United States for more than $10,000 often found himself in a

---

[5] H. R. Rep. No. 913, 68th Cong., 1st Sess., 5–6, 15–16 (1924); S. Rep. No. 941, 68th Cong., 2d Sess., 5–6, 15–16 (1925); 66 Cong. Rec. 2088 (1925) (remarks of Rep. Underhill).

[6] *Ibid.* (remarks of Reps. Denison, Underhill, and Bulwinkle).

difficult position. He had to choose between proceeding in the district court under one of the admiralty Acts, and proceeding in the Court of Claims under the Tucker Act. And he had to choose his forum wisely, for cases were not transferable between the district courts and the Court of Claims, and an incorrect choice could result in the applicable statute of limitations having run by the time the error was discovered.[7] The solution of filing claims in both the district court and the Court of Claims was unavailable, because under 28 U. S. C. § 1500 the Court of Claims has no jurisdiction over any claim that is the subject of a pending suit in any other court. See *Wessel, Duval & Co.* v. *United States,* 129 Ct. Cl. 464, 124 F. Supp. 636 (1954).

Because of serious uncertainties about the reach of the Suits in Admiralty and Public Vessels Acts on the one hand, and the Tucker Act on the other, the crucial determination of the appropriate forum for a claim was often a difficult one.[8] The jurisdictional uncertainties under these Acts were illustrated in *Calmar S. S. Corp.* v. *United States,* 345 U. S. 446 (1953). In that case the private

---

[7] H. R. Rep. No. 523, 86th Cong., 1st Sess., 2 (1959) (hereinafter cited as House Report); S. Rep. No. 1894, 86th Cong., 2d Sess., 3 (1960) (hereinafter cited as Senate Report). The problem was most severe when suit was incorrectly brought in the Court of Claims under the Tucker Act, which has a six-year statute of limitations, 28 U. S. C. § 2401 (a); the Suits in Admiralty and Public Vessels Acts have two-year limitation periods. 46 U. S. C. §§ 745, 782.

[8] The respective House and Senate Committee Reports explained the problem as follows:

"Since the applicability of [the Suits in Admiralty, Public Vessels, and Tucker Acts] to a given factual situation is frequently exceedingly difficult to determine and a question on which reasonable men may differ, lawyers in maritime practice occasionally and unavoidably bring suit in the wrong forum." House Report 2; Senate Report 3.

owner of a steamship under charter to the United States brought suit for additional charter hire for the loss of its vessel, which was bombed by enemy airplanes while carrying military supplies and equipment. The vessel was clearly not a "public vessel" under the Public Vessels Act, because it was privately owned and operated. The question was whether the vessel, "undoubtedly 'operated . . . for the United States' was 'employed as a merchant vessel' within the meaning of the [Suits in Admiralty] Act while carrying military supplies and equipment for hire." *Id.*, at 447. The District Court held that it was a merchant vessel and assumed jurisdiction under the Suits in Admiralty Act. The Court of Appeals reversed on the ground that while the vessel could have been employed as a merchant vessel under its charter, it was not so employed while transporting war materiel. Having thus successfully argued to the Court of Appeals that the suit was not cognizable under either the Suits in Admiralty Act or the Public Vessels Act, the Government reversed its position in this Court. It argued, and the Court held, that the nature of the cargo was irrelevant and that the vessel was employed as a merchant vessel within the meaning of the Suits in Admiralty Act. The Court was clearly sensitive to the fact that a contrary ruling would have relegated the plaintiff to the Court of Claims, *id.*, at 455, but even after *Calmar* there remained the possibility that a particular vessel would be held to be neither a "public vessel" nor "employed as a merchant vessel."

The sharp reversals of position by the Government and the courts in the *Calmar* case were but illustrative of the jurisdictional uncertainties faced by potential litigants. In several instances, courts reached conflicting results as to whether certain types of claims should be brought in the district court under the Suits in Admiralty

Act or the Public Vessels Act on the one hand, or in the Court of Claims under the Tucker Act on the other.[9]

It was the difficulty in determining the appropriate forum for a maritime claim against the United States that moved Congress to amend the Suits in Admiralty Act in 1960. The amendment first passed by the House in 1959 was designed to ameliorate the harsh consequences of misfilings by authorizing the transfer of cases between the district courts and the Court of Claims.[10] The transfer provision would "prevent dismissal of suits which would become time-barred when the appropriate forum had finally been determined."[11] But the Senate Committee on the Judiciary found the House bill inadequate:

> "The transfer bill would operate to prevent ultimate loss of rights of litigants, but it did nothing to eliminate or correct the cause of original erroneous choices of forum while it could increase the existing delays."[12]

Accordingly, the committee, while accepting the House

---

[9] See House Report 3; Senate Report 4. Compare *Aliotti v. United States,* 221 F. 2d 598 (CA9 1955), with *Eastern S. S. Lines v. United States,* 187 F. 2d 956 (CA1 1951); *Lykes Bros. S. S. Co. v. United States,* 129 Ct. Cl. 455, 124 F. Supp. 622 (1954), with *States Marine Corp. v. United States,* 120 F. Supp. 585 (SDNY 1954), rev'd, 220 F. 2d 655 (CA2 1955); *Smith-Johnson S. S. Corp. v. United States,* 135 Ct. Cl. 869, 139 F. Supp. 298, cert. denied, 351 U. S. 988 (1956), with *Sword Line v. United States,* 228 F. 2d 344 (CA2 1955), 230 F. 2d 75 (CA2), aff'd, 351 U. S. 976 (1956) (after *Sword Line* was affirmed, the Court of Claims reversed itself in *Smith-Johnson, supra,* in 135 Ct. Cl. 866, 142 F. Supp. 367 (1956)).

[10] The House had passed an identical bill in 1958, H. R. 3046, 85th Cong., 1st Sess., but it did not emerge from the Senate Committee on the Judiciary before the expiration of the 85th Congress.

[11] House Report 3; Senate Report 4.

[12] *Id.,* at 6.

amendment, proposed several additional amendments, whose purpose was stated succinctly as follows:

> "The purpose of the amendments is to make as certain as possible that suits brought against the United States for damages caused by vessels and employees of the United States through breach of contract or tort can be originally filed in the correct court so as to proceed to trial promptly on their merits." [13]

Two amendments were designed to clarify the jurisdictional language of the Suits in Admiralty Act. First, the committee added language authorizing suits against the United States where a suit would be maintainable "if a private person or property were involved." The prior version of the Act had authorized suits against the United States only when suits would be maintainable if the "vessel" or "cargo" were privately owned, operated, or possessed, and that language had generated considerable confusion. [14]

---

[13] *Id.,* at 2.

[14] Senate Report 5, citing *Ryan Stevedoring Co.* v. *United States,* 175 F. 2d 490 (CA2), cert. denied, 338 U. S. 899 (1949). Compare *Lykes Bros. S. S. Co.* v. *United States, supra,* with *States Marine Corp.* v. *United States, supra.*

This amendment, which has no bearing on this case, has generally been held to require that those maritime tort claims that were previously cognizable only on the law side of the district courts under the Federal Tort Claims Act now be brought on the admiralty side of the district courts under the Suits in Admiralty Act. See *T. J. Falgout Boats, Inc.* v. *United States,* 361 F. Supp. 838 (CD Cal. 1972), aff'd, 508 F. 2d 855 (CA9 1974), cert. denied, 421 U. S. 1000 (1975); *Roberts* v. *United States,* 498 F. 2d 520 (CA9), cert. denied, 419 U. S. 1070 (1974); *De Bardeleben Marine Corp.* v. *United States,* 451 F. 2d 140 (CA5 1971); *Utzinger* v. *United States,* 246 F. Supp. 1022 (SD Ohio 1965); *Tankrederiet Gefion A/S* v. *United States,* 241 F. Supp. 83 (ED Mich. 1964);

Second, the committee made the change that concerns us in this case: it deleted the language in the jurisdictional section of the Suits in Admiralty Act requiring that a vessel be "employed as a merchant vessel." We have already noted the confusion evidenced by the Government and the courts in the *Calmar* case over whether the vessel in question was "employed as a merchant vessel." In addition, the Senate Report referred to other cases in which the "employed as a merchant vessel" language had caused jurisdictional difficulties. For example, in *Continental Cas. Co.* v. *United States,* 140 Ct. Cl. 500, 156 F. Supp. 942 (1957), the Court of Claims had held that a suit on a contract for the repair of a vessel that had been out of service for several years was not authorized by the Suits in Admiralty Act, because at the time the repairs were made "the vessel was not employed at all," and could not therefore be said to have been "employed as a merchant vessel." Similarly, in *Eastern S. S. Lines* v. *United States,* 187 F. 2d 956 (CA1 1951), the Court of Appeals affirmed the dismissal of a vessel owner's contract claim against the United States for the amount necessary to recondition its vessel as a cargo and passenger ship after the Army had used it for troop transport and hospital services. The Court of Appeals held that the Suits in Admiralty Act had no application because the Army had not employed the vessel as a merchant vessel. The results in *Continental Casualty* and *Eastern S. S. Lines* were, the Senate Report noted, contrary to results reached in other cases "on essentially identical facts." [15] It was

---

*Tebbs* v. *Baker-Whitely Towing Co.,* 227 F. Supp. 656 (Md. 1964); *Beeler* v. *United States,* 224 F. Supp. 973 (WD Pa.), rev'd on other grounds, 338 F. 2d 687 (CA3 1964).

[15] Senate Report 5, citing *Shewan & Sons* v. *United States,* 266 U. S. 108 (1924); *Aliotti* v. *United States,* 221 F. 2d 598 (CA9 1955); *Sinclair Rfg. Co.* v. *United States,* 129 Ct. Cl. 474, 124 F.

to make clear that such cases could be brought on the admiralty side of the district courts that the committee recommended the deletion of the confusing "employed as a merchant vessel" proviso.

## C

Respondent contends that the deletion of the "employed as a merchant vessel" proviso was intended to abolish the distinction between a merchant vessel and a public vessel, and thereby enable suits previously cognizable under the Public Vessels Act to be brought under the Suits in Admiralty Act, free from the restrictive provisions of the Public Vessels Act. There is no indication that Congress had any such broad purpose.[16] The legislative history contains no explicit suggestion that Congress intended to render nugatory the provisions of the Public Vessels Act. Nor does it express any broad intent to put an end to all litigation over whether a vessel is a public vessel.

The definitions of "merchant vessel" and "public vessel" were of interest to Congress only insofar as they related to Congress' basic purpose: to remove uncertainty over the proper forum for a claim against the United States. In this regard, it is quite clear that Congress' concern was not with uncertainty whether a suit should be brought under the Suits in Admiralty Act or under the Public Vessels Act, since in either event the proper forum was the admiralty side of the district court. See

---

Supp. 628 (1954). Of course, this Court's decision in the *Calmar* case cast doubts on at least some decisions narrowly defining the scope of admiralty jurisdiction under the Suits in Admiralty and Public Vessels Acts. Congress was understandably of the view that confusion remained after *Calmar*.

[16] We do not view the dictum in *Amell* v. *United States*, 384 U. S. 158, 164 (1966), as requiring a result different from the one we reach today.

*Calmar S. S. Corp.*, 345 U. S., at 454–455. The Senate Report stated the concern precisely:

> "The serious problem, and the one to which this bill is directed, arises in claims exceeding $10,000 where there is uncertainty as to whether a suit is properly brought under the Tucker Act [in the Court of Claims] on the one hand or the Suits in Admiralty or Public Vessels Act [on the admiralty side of the district court] on the other." [17]

In short, Congress saw confusion between the category of suits cognizable under the Suits in Admiralty Act or Public Vessels Act on the one hand, and the category of suits cognizable under the Tucker Act on the other. It attempted to eliminate the confusion between these two categories by expanding the scope of the Suits in Admiralty Act at the expense of the Tucker Act—thereby virtually eliminating the quasi-admiralty jurisdiction of the Court of Claims under the Tucker Act.[18] But Congress did nothing to alter the distinction between the Suits in Admiralty Act and the Public Vessels Act, or expand the one at the expense of the other.

That the House and Senate Reports contain a reference to "confusion in establishing whether a vessel is a 'merchant vessel' or a 'public vessel' " does not suggest otherwise. That reference appears in the course of a discussion of the difficulty in choosing the proper forum for a claim. To a limited extent, doubt whether a vessel

---

[17] Senate Report 3.

[18] The Court of Claims has not been completely deprived of jurisdiction over claims arising in a maritime context. In *Amell* v. *United States, supra,* we held that wage claims exceeding $10,000 by Government employees working aboard Government vessels are still cognizable exclusively in the Court of Claims, where wage claims by Government employees have traditionally been cognizable.

was a merchant vessel or a public vessel created uncertainty over the proper forum. The Reports explained:

> "If [a vessel is] a 'merchant vessel,' under the Suits in Admiralty Act exclusive jurisdiction is in the district court in admiralty. If a 'public vessel,' jurisdiction may be either in admiralty under the Public Vessels Act or under the Tucker Act, depending on the nature of the claim. It will be recalled that a claim under the Tucker Act exceeding $10,000 must be brought in the Court of Claims." [19]

Congress' concern was that because of differences in the authorizational language of the Suits in Admiralty Act and the Public Vessels Act, some claims that would clearly have been within the jurisdiction of the district court if merchant vessels were involved had been held to be beyond the district court's jurisdiction when public vessels were involved. Thus, some courts had held that contract claims other than those expressly authorized by the Public Vessels Act were generally not cognizable under the Act.[20] Litigants with certain types of contract claims therefore faced the possibility that the appropriate forum would depend on the type of vessel involved. Congress' deletion of the "employed as a merchant vessel" proviso was clearly intended to remove such uncertainty as to the proper forum by bringing within the Suits in Admiralty Act whatever category of claims

---

[19] House Report 2; Senate Report 3.

[20] See, e. g., *Eastern S. S. Lines* v. *United States*, 187 F. 2d, at 959; *Continental Cas. Co.* v. *United States,* 140 Ct. Cl. 500, 156 F. Supp. 942 (1957). Other than claims for "damages caused by a public vessel of the United States," the only claims expressly authorized by the Public Vessels Act are claims "for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States." 46 U. S. C. § 781.

involving public vessels was beyond the scope of the Public Vessels Act.[21] But claims like the instant one, that fell within the Public Vessels Act, presented none of the problems with which Congress was concerned in 1960, and there is therefore no reason to infer that Congress intended to affect them.

## III

In sum, the interpretation of the 1960 amendment advanced by the respondent and adopted by the Court of Appeals would effectively nullify specific policy judgments made by Congress when it enacted the Public Vessels Act, by enabling litigants to bring suits previously subject to the terms of the Public Vessels Act under the Suits in Admiralty Act. The language of the amendment does not explicitly authorize such a result, and the legislative history reflects a narrow congressional purpose that would not be advanced by that result. We therefore hold that claims within the scope of the Public Vessels Act remain subject to its terms after the 1960 amendment to the Suits in Admiralty Act. Since there is no dispute that respondent's claim falls within the embrace of the Public Vessels Act, the Court of Appeals erred in concluding that the reciprocity provision of the Public Vessels Act is inapplicable.

Respondent urges two additional grounds for affirmance. First, it contends that the reciprocity provision, even if applicable, does not bar its claim, because the owners of 99% of its stock are Americans and it is in substance an American owner. The District Court rejected

---

[21] It is not to be assumed that contract claims other than those expressly authorized by the Public Vessels Act were necessarily beyond the scope of the Act. As in *Calmar S. S. Corp.* v. *United States,* 345 U. S. 446, 456 n. 8 (1953), we intimate no view on the subject.

this contention, and the Court of Appeals did not address it since it found the reciprocity provision inapplicable. Second, respondent argues that if it is considered a national of the Philippines, whose suit would fall within the prohibition of the reciprocity provision, that provision denies it due process in violation of the Fifth Amendment. This argument was not even presented to the District Court, and was not addressed by the Court of Appeals. We leave the consideration of these two additional contentions, to the extent they were adequately raised, to the Court of Appeals on remand.

The judgment of the Court of Appeals is reversed, and the case remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.

MR. JUSTICE STEWART, dissenting.

Congress amended the Suits in Admiralty Act in 1960 to eliminate the distinction the Act formerly drew between public vessels and merchant vessels owned or operated by the United States. 74 Stat. 912. See S. Rep. No. 1894, 86th Cong., 2d Sess., 3 (1960). See also S. Rep. No. 92–1079, pp. 5–6 (1972). Six years later the then Solicitor General explained the effect of that amendment in a brief filed on behalf of the Government in this Court:

> "As originally enacted, the Suits in Admiralty Act was limited to government merchant vessels and tugboats, and excluded public vessels. The latter were separately covered in the Public Vessels Act . . . . Because of uncertainty engendered by the public-merchant vessel distinction, . . . Congress in 1960 amended Section 2 of the Suits in Admiralty Act

to delete the reference to merchant vessels. . . .
Thus, the Suits in Admiralty Act now extends to
government public as well as merchant vessels."
Brief for United States 9 n. 1, in *Amell* v. *United
States,* No. 282, O. T. 1963.[1]

In the present case the Government has steered an
entirely different course, arguing that Congress did not
intend to expand the scope of the Suits in Admiralty Act
to include public vessels, and that the plain language
of the Act should be ignored.   I cannot accept this box-
ing of the compass.   At best, the United States has
demonstrated only that the legislative history indicates
that Congress was concerned with more than one prob-
lem in amending the law.   But ambiguous legislative his-
tory surely cannot suffice to undermine the plain words of
the statute, when no persuasive policy considerations [2]
and no repeal by implication [3] are involved.

---

[1] This Court agreed: "In 1960, . . . Congress abolished the dis-
tinction between public and merchant vessels, a matter which had
sorely confused attorneys . . . ."  *Amell* v. *United States,* 384 U. S.
158, 164.

[2] Since the United States could have sued the owners of the fish-
ing boat in the Philippines had the fishing boat rammed the de-
stroyer, it would do no violence to the concept of reciprocity to
allow the owners of the boat to sue the United States in a federal
court.   And while the United States would no longer be able *sua
sponte* to prevent the enforcement of subpoenas or stay proceedings
against naval vessels and their crews, it is not realistic to think that
a federal court would refuse such relief if national security were in
any way at stake.   Finally, prejudgment interest is awardable under
the Suits in Admiralty Act, and not under the Public Vessels Act,
but the amount of money involved in such awards is not large and
the award of interest is discretionary in any event.   *The Scotland,*
118 U. S. 507, 519.   None of these governmental interests sup-
posedly served by the Public Vessels Act, but not by the Suits in
Admiralty Act, is, therefore, significant.

[3] The judgment of the Court of Appeals does not amount to a
repeal of the Public Vessels Act, since there will still be cases cog-

The plain language of the Suits in Admiralty Act authorizes anyone to sue the United States for damages caused by any United States vessel. There is no need to inquire further: "When there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a Court in departing from the plain meaning of words . . . in search of an intention which the words themselves did not suggest." *United States* v. *Wiltberger,* 5 Wheat. 76, 95–96 (Marshall, C. J.). As the Court said 10 years ago in construing the Suits in Admiralty Act: "If we are here misconstruing the intent of Congress, it can easily set the matter to rest by explicit language." *Amell* v. *United States,* 384 U. S. 158, 166. So long as the law reads as it now does, I think the Court of Appeals correctly understood it, and I would, therefore, affirm the judgment before us.[4]

---

nizable only under that Act by reason of its broader venue provisions. Compare 46 U. S. C. § 742 with 46 U. S. C. § 782.

[4] While no other Court of Appeals has ruled on the precise issue presented here, two have indicated that they would reach the same result as did the Ninth Circuit. *United Philippine Lines, Inc.* v. *The Daniel Boone,* 475 F. 2d 478, 480 n. 5 (CA4); *Ira S. Bushey & Sons, Inc.* v. *United States,* 398 F. 2d 167, 169 (CA2). See also *De Bardeleben Marine Corp.* v. *United States,* 451 F. 2d 140, 145–146 (CA5).