January 2, 1979

## 79-1    MEMORANDUM OPINION FOR THE GENERAL COUNSEL, DEPARTMENT OF ENERGY

### Department of Energy—Civil Service Commission— Number of Supergrade Positions the Secretary of Energy May Fill Pursuant to the Department of Energy Organization Act (42 U.S.C. § 7101)

This responds to your request for our opinion concerning the authority of the Secretary of Energy (Secretary) under the Department of Energy Organization Act (DEOA) or (Act)[1] to fill 20 supergrade positions originally authorized by the Economic Stabilization Act of 1970 (ESA)[2] and carried forward by the Emergency Petroleum Allocation Act of 1973 (EPAA).[3] We conclude that the interpretation of the DEOA by the Civil Service Commission (CSC) is correct and that those positions are not available to the Secretary.

The 20 supergrade positions at issue were created by § 212(d) of the ESA[4] and carried forward by § 5(a) of the EPAA.[5] When the Federal Energy Administration of 1974 (FEAA) was enacted,[6] President Nixon delegated his authority under the EPAA to the Federal Energy Administration

---

[1] Pub. L. No. 95-91, 91 Stat. 565 (1977), codified at 42 U.S.C. § 7101 et seq.

[2] Pub. L. No. 91-379, 84 Stat. 796 (1970), as amended by Pub. L. No. 91-558, Title II, § 201, 84 Stat. 1468 (1970), Pub. L. No. 92-8, § 2, 85 Stat. 13 (1971), Pub. L. No. 92-15, § 3, 85 Stat. 38 (1971), Pub. L. No. 92-210, § 2, 85 Stat. 743 (1971), Pub. L. No. 93-28, §§ 2-8, 87 Stat. 27 (1973), reprinted at 12 U.S.C. § 1904 note.

[3] 15 U.S.C. § 751 et seq.

[4] Pub. L. No. 92-210, § 212(d), 85 Stat. 743, 751 (1971), reads as follows:

(1) In addition to the number of positions which may be placed in GS-16, 17, and 18, under section 5108 of title 5, United States Code, not to exceed twenty positions may be placed in GS-16, 17, and 18, to carry out the functions under this title.

(2) The authority under this subsection shall be subject to the procedures prescribed under section 5108 of title 5, United States Code, and shall continue only for the duration of the exercise of functions under this title.

[5] 15 U.S.C. § 754(a)(1)(B).

[6] 15 U.S.C. § 761 et seq.

(FEA) Administrator.[7] The DEOA transferred all the functions of the FEA to the Secretary,[8] and saved all authority available to the President immediately prior to the effective date of the Act.[9] It is arguable that the authority for the 20 supergrades has never lapsed and presently resides in the Secretary. You contend that § 621(d) of the DEOA expressly preserves the § 212(d) authority by providing that the Secretary may fill 200 supergrade positions "in addition to the number of positions which may be placed at GS–16, GS–17 and GS–18 under section 5108 of title 5, United States Code, under existing law, or under this Act."[10]

Although your contention is not without force, our analysis of the statutory structure and purpose leads us to conclude as follows: (1) recognition of the 20 additional supergrade positions would be inconsistent with the Act and congressional intent; (2) the phrase "under existing law" in § 621(d) was not intended to refer to § 212(d) of the ESA; and thus (3) the authority provided by § 212(d) is not available to the Secretary.

## Supergrade Positions Under DEOA

Section 621 of the Act gives the Secretary the authority to fill a total of 689 supergrade positions. Some must be filled pursuant to the civil service laws, others are exempt, and still others are initially exempt but will eventually be covered.[11] The CSC contends that the 689 positions represent the

---

[7] Exec. Order No. 11790, § 2(a), 39 F.R. 23185 (1974).

[8] § 301(a), 42 U.S.C. § 7151(a).

[9] § 708, 42 U.S.C. § 7298.

[10] 42 U.S.C. § 7231(d).

[11] § 621, 42 U.S.C. § 7231, provides, in relevant part:

(b)(1) Subject to the limitations provided in paragraph (2) and to the extent the Secretary deems such action necessary to the discharge of his functions, he may appoint not more than three hundred eleven of the scientific, engineering, professional, and administrative personnel of the department without regard to the civil service laws, and may fix the compensation of such personnel not in excess of the maximum rate payable for GS–18 of the General Schedule under section 5332 of Title 5 [United States Code].

(2) The Secretary's authority under this subsection to appoint an individual to such a position without regard to the civil service laws shall cease

(A) when a person appointed, within four years after the effective date of this chapter, to fill such position under paragraph (1) leaves such position, or

(B) on the day which is four years after such effective date, whichever is later.

(c)(1) Subject to the provisions of chapter 51 of Title 5 [United States Code], but notwithstanding the last two sentences of section 5108(a) of such title, the Secretary may place at GS–16, GS–17, and GS–18, not to exceed one hundred seventy-eight positions of the positions subject to the limitation of the first sentence of section 5108(a) of such title.

(2) Appointments under this subsection may be made without regard to the provisions of section 3324 of Title 5 [United States Code], relating to the approval by the Civil Service Commission of appointments under GS–16, GS–17, and GS–18 if the individual placed in such position is an individual who is transferred in connection with a transfer of functions under this chapter and who, immediately before the effective date of this chapter, held a position and duties comparable to those of such position.

(3) The Secretary's authority under this subsection with respect to any position shall cease when the person first appointed to fill such position leaves such position.

(Continued)

2

total number of supergrade positions presently available to the Secretary. The Department of Energy (DOE) asserts that § 621 is not exclusive and that the 689 figure is not an absolute limit. Resolution of this issue requires a detailed analysis of the history of § 621.

The provisions concerning supergrade positions underwent substantial change as the DEOA progressed through Congress. The Senate bill, S. 826, gave the Secretary the authority to fill 600 "scientific, engineering, professional, and administrative" supergrade positions without regard to civil service laws.[12] It further provided:

> In addition to the number of positions which may be placed in grades GS-16, 17, and 18 under section 5332 of title 5, United States Code, under existing law or this Act, not to exceed one hundred and fifty positions may be placed in grades GS-16, 17, and 18 to carry out functions under this Act. Positions established by this subsection shall be subject to standards and procedures under chapter 51 of title 5, United States Code.[13]

The bill, as passed by the Senate, vested the Secretary with the authority to fill 750 supergrade positions. It thus provided for approximately 75 more supergrade positions than were authorized for the agencies to be merged into DOE.[14] These extra positions, it was asserted, would allow for "room for growth" in the new department.[15] The provisions concerning supergrades received virtually no attention in Senate deliberations on the DEOA.

In the House, the supergrade positions were a major subject of discussion. H.R. 6804 as reported by the House Committee on Government

---

(Continued)
    (d) In addition to the number of positions which may be placed at GS-16, GS-17, and GS-18 under section 5108 of Title 5 [United States Code], under existing law, or under this chapter and to the extent the Secretary deems such action necessary to the discharge of his functions, he may appoint not more than two hundred of the scientific, engineering, professional, and administrative personnel without regard to the civil service laws and may fix the compensation of such personnel not in excess of the maximum rate payable for GS-18 of the General Schedule under section 5332 of Title 5 [United States Code].

[12] S. 826, 95th Cong., 1st sess. § 611 (1977).

[13] *Id.*, § 612(b).

[14] *See* Department of Energy Organization Act; Hearings on H.R. 4263 Before the Subcommittee on Legislation and National Security of the House Committee on Government Operations, 95th Cong., 1st sess. 83-84 (1977) (testimony of James R. Schlesinger); Federal Personnel for the Proposed Department of Energy: Hearings on H.R. 4263 Before the Subcommittee on Employee Ethics and Utilization of the House Committee on Post Office and Civil Service, 95th Cong., 1st sess. 3 (1977) (statement of Robert F. Allnutt, Acting Assistant Administrator for Administration, Energy Research and Development Administration (ERDA)). H.R. 4263 was the companion bill to S. 826.

Presumably, DOE would assert that under the Senate bill the Secretary was not limited to 750 supergrade positions because § 612(b) includes the phrase "in addition to the number of positions which may be placed * * * under existing law." However, we are satisfied that the original bill did intend to limit the total number of positions to 750 and that the phrase "under existing law" was not intended to increase the number.

[15] Hearings Before the Subcommittee on Employee Ethics, *supra*, note 14 at 16.

3

Operations gave the Secretary the authority to appoint, without regard to the civil service laws, "not more than the number of scientific, engineering, and professional supergrade personnel" then authorized for ERDA.[16] Furthermore, the Secretary could fill up to 105 supergrade positions "in addition to the number of positions which may be placed in grade 16, 17 and 18 of the General Schedule under section 5108 of title 5, United States Code, or under * * * the Act."[17]

By these provisions, the Government Operations Committee sought to transfer to the newly established DOE all the supergrade positions authorized for the agencies to be merged into DOE. The Committee carefully identified 689 extant supergrade positions:

| | | |
|---|---|---|
| Energy Research and Development Administration | – | 511 |
| Federal Energy Administration | – | 105 |
| Federal Power Commission | – | 52 |
| Department of the Interior | – | 11 |
| Other agencies | – | 10 |

689

H.R. 6804 carried over 511 scientific, engineering, and professional positions then authorized for ERDA and 105 positions then authorized for FEA. The Committee Report provided for the 105 FEA supergrade positions because they were "authorized pursuant to the provisions of the FEA Act which will terminate upon enactment of this legislation."[18] No mention was made of the remaining transferred positions since they were "presently authorized under civil service laws and will continue to be so after the positions are transferred to DOE."[19] Thus, unlike the Senate bill, the House bill, as originally reported, sought to limit the number of supergrade positions in DOE to those then existing in agencies to be merged into the new department: "The intent of the committee is to make no change in existing law regarding supergrade positions in the affected agencies, except to impose a ceiling at the current level of such positions connected with all transferred functions."[20]

The House Committee on Post Office and Civil Service proposed amendments to H.R. 6804 on the subject of the number of exempt supergrade positions, and it requested sequential referral of the bill after the Government Operations Committee refused to accept these amendments. The Civil Service Committee believed that H.R. 6804, as reported, would "dangerously dilute existing controls over a bureaucracy which is rapidly becoming uncontrollable;" it was "deeply concerned" about the provisions giving the Secretary authority to fill large numbers of

---

[16] H.R. 6804, 95th Cong., 1st sess. § 607 (1977).

[17] *Id.*, § 608(b).

[18] H. Rept. 346, Part I, 95th Cong., 1st sess. 12, 28 (1977).

[19] *Id.*, at 12.

[20] *Id.*, at 12.

supergrade positions outside the purview of the civil service laws and establishing a special authority for 105 supergrades.[21] Accordingly, the Committee proposed amendments, later accepted by the House, giving the Secretary the authority to fill 350 supergrade positions subject to the civil service laws[22] and only 200 supergrade positions exempted from the civil service laws.[23] However, while the Committee changed the method of appointment, it did not seek to alter the total number of supergrades provided for by the Government Operations Committee:

> This committee understands that it is the intent of the Government Operations Committee to provide supergrade authorization in H.R. 6804 to an extent equivalent to that existing under present law. No new authorization, that is, authorization in excess of that provided under existing law, is intended.[24]

The Conference Committee adopted § 621 of the Act as a compromise between the House and Senate bills.[25] The Act provides for (1) 311 scientific, engineering, professional, and administrative supergrades,[26] (2) 178 supergrade positions to be allocated from CSC's pool under 5 U.S.C. 5108,[27] and 200 supergrade positions exempt from the civil service laws. While there is no stated reason for selecting these individual figures,[28] we believe that the Conference adopted the House's proposal and "[t]he conferees agreed to assign to DOE 689 supergrade positions which represent the same number of positions as are presently authorized for functions to be transferred to DOE."[29] Representative Schroeder, a conferee and member of the House Committee on Post Office and Civil Service, defended the conference report before the House, stating, "[W]e retained the House position and there will be no more supergrades in the new

---

[21] H. Rept. 346, Part II, 95th Cong., 1st sess. 5 (1977).

[22] These supergrade positions would be allocated to the agency from the CSC pool of supergrade positions authorized for the Federal Government as a whole, pursuant to 5 U.S.C. 5108. Accordingly, the House adopted an amendment to § 5108 increasing the pool by 350. H.R. 6804, 95th Cong., 1st sess. § 714(c)(1977).

[23] While the amendments of the Committee on the Post Office and Civil Service only authorized the total of 550 exempt and nonexempt supergrade positions for DOE, the Committee noted that 73 additional positions were already allocated by CSC from its § 5108 pool to existing agencies and would be transferred to DOE. Furthermore, CSC could allocate additional supergrades to DOE to fill "professional engineering positions primarily concerned with research and development and professional positions in the physical and natural sciences and medicine" which are excepted from the overall pool limit. See 5 U.S.C. § 5108.

[24] H. Rept. 346, Part II, at 7. See 123 CONG. REC. H. 5280 (daily ed., June 2, 1977) (remarks of Representative Schroeder); id. at H. 5283 (remarks of Representative Gilman).

[25] The provisions concerning supergrade positions adopted by the Conference are substantially different from both the Senate and House bills. Indeed, Representative Bauman asserted that the Conference exceeded its mandate in devising the new provisions. 123 CONG. REC. H. 8250 (daily ed., Aug. 2, 1977).

[26] These positions would initially be filled without regard to the civil service laws but would be subject to the civil service laws as soon as the original appointee left office or after 4 years, whichever is later. § 621(b), 42 U.S.C. § 7231(b).

[27] To accommodate these new "pool" positions, § 710(b) of the Act added 489 positions to the § 5108 pool.

[28] The number 178 for § 621(c) appears to represent FEA's authorization (105) plus 73 supergrades assigned to agencies other than ERDA.

[29] S. Rept. 367, 95th Cong., 1st sess. 93 (1977).

5

agency than there are in all agencies that are consolidated into the Department of Energy * * * [I]t was very hard to get the Senate to yield to the House position of no new additional supergrades."[30]

We believe that Congress intended to give the Secretary the authority to fill only 689 supergrade positions in the new department—the number then authorized in the "other agencies that are being melded into the Department of Energy."[31] Representative Horton explained, "what we did when we got to the conference was to determine that there are now 689 authorized supergrades."[32]

The DOE argues that, while it is clear that § 621 was intended to authorize only 689 positions, that number was not an overall limit under the Act and was not intended to override additional sources of appointment authority. We disagree. It is clear that Congress intended to authorize in § 621 all the supergrade positions then authorized for the preexisting agencies and administrations. It calculated the number of authorized positions as 689.

Moreover, we believe that the 689 figure already includes the 20 supergrades at issue here; thus to read the Act as preserving § 212(d) would be to double-count these positions.

As noted above, the EPAA carried forward § 212(d) of the ESA. One year after passage of the EPAA, Congress enacted the FEAA. That Act did not repeal the EPAA; and § 7(a) provided:

> In addition to the number of positions which may be placed in GS–16, 17, and 18 under existing law, not to exceed 91 positions may be placed in GS–16, 17, and 18 to carry out the functions under this chapter: *Provided,* That the total number of positions within the Administration in GS–16, 17, 18 shall not exceed 105 * * * . [15 U.S.C. § 766(a)(1).]

Presumably the 20 supergrade positions carried forward by the EPAA would be included in the phrase "under existing law."

When Congress tallied up the total number of supergrades, it counted FEA's share as 105. It appears to have included the 20 supergrade positions in the 105,[33] and it made no mention of, or provision for, § 212(d) of the ESA. Thus, either Congress treated § 212(d) of the ESA as merged into FEA's share or it transferred to the Secretary the portion of § 212(d) authority given to the FEA Administrator. In either case, to permit the Secretary to fill additional supergrade positions beyond the 689 authorized by § 621 would be to double-count at least a portion of the positions authorized by § 212(d) of the ESA.[34]

---

[30] 123 CONG. REC. H. 8257 (daily ed., Aug. 2, 1977).

[31] *Id.,* at H. 5281 (daily ed., June 2, 1977).

[32] *Id.,* at H. 8262 (daily ed., Aug. 2, 1977).

[33] *See* Hearings, *supra,* at 626, note 14 (table compiled by Comptroller General indicating that 105 FEA positions to be transferred to DOE include the 20 authorized by the ESA).

[34] It may be argued that § 7(a) merely "held in abeyance" a portion of the authority to appoint the 20 supergrades (given the fact that the FEA Administrator could appoint 91

(Continued)

Further, we believe that the phrase "under existing laws" in § 621(d) was not intended to resurrect or recognize § 212(d) of ESA.

The relevant statutory language provides:

> In addition to the number of positions which may be placed at GS–16, GS–17, and GS–18 under section 5108 of Title 5, [United States Code] under *existing* law, or under this chapter and to the extent the Secretary deems such action necessary to the discharge of his functions, he may appoint not more than two hundred of the scientific, engineering, professional, and administrative personnel without regard to the civil service laws and may fix the compensation of such personnel not in excess of the maximum rate payable for GS–18 of the General Schedule under section 5332 of Title 5 [United States Code].[35] [Emphasis added.]

The language of § 621(d) is not readily susceptible to a satisfactory parsing and there are two possible interpretations of this subsection. On the one hand, the use of the word "under" in three subsequent phrases separated by commas may be interpreted to identify three sources of supergrade positions, namely, (1) section 5108, (2) "existing law," and (3) the provisions of the Act.

Alternatively, this subsection may be interpreted to contemplate only two sources of supergrade authority: (1) section 5108, and (2) the provisions of the Act, so that the phrase "under existing law" would refer to the number of supergrade positions authorized and allocated by CSC.[36] Under this interpretation, the Secretary would have the authority to appoint 200 supergrades in addition to those supergrade positions authorized elsewhere in the Act and any supergrade positions that CSC has already allocated or may allocate from its section 5108 pool.

Neither interpretation is entirely satisfactory. Under the first reading (urged by DOE), the phrase "under section 5108 of title 5, United States Code," is redundant because it would be clearly included in the phrase "under existing law." Under the second interpretation (urged by CSC),

---

(Continued)

supergrades up to a limit of 105 positions overall) and that this restriction was lifted once the limit of 105 was terminated. This interpretation would, however, effectively authorize new supergrade positions—a result contrary to congressional intent. As indicated by the House Committee on Government Operations, its intent was to "impose a ceiling [on supergrade positions] at the current level." H. Rept. 346, part I, at 12. To the extent the full power to appoint under § 212(d) of the ESA was suspended by the FEAA, such a suspension was carried forward by the DEOA.

The probability that Congress considered § 212(d) of the ESA to have merged into § 7(a) of the FEAA may explain why the DEOA makes no mention of § 212(d), although it repeals § 7(a) of the FEAA and states that § 161(d) of the Atomic Energy Act (also relating to appointment of personnel) shall not apply to functions transferred under the DEOA. *See* § 709(a)(2), (c)(2).

[35] 42 U.S.C. § 7231(d) [Emphasis added.]

[36] It should be recalled that at the time of the passage of the Act, 73 supergrade positions had already been allocated by CSC from its § 5108 pool to functions that were to be transferred to DOE. *See* H. Rept. 346, Part II, at 7.

the phrase "under existing law" appears to add nothing to the phrase "under section 5108."[37]

We find the interpretation of the statute rendered by CSC more persuasive and we do not believe that the phrase "under existing law" was intended to collect unexpired or unrepealed grants of authority for supergrade positions. Accepting DOE's interpretation of the phrase and including the 20 supergrade positions authorized by § 212(d) of the ESA would be contrary to the intent of Congress to limit DOE to 689 positions. We believe that § 621(d) authorized the Secretary to fill up to 200 exempt supergrade positions in addition to the supergrade positions he may fill pursuant to other provisions of the Act or as are allocated to DOE by CSC.

We concur with CSC's statement that by authorizing 689 positions "Congress was well aware of all the laws under which energy functions were performed and that Congress' purpose was to merge and consolidate the laws and their functions into the newly created functions of DOE." Also, we believe that the number of authorized positions was not an absolute limit. At a request, additional positions may be allocated to DOE by CSC pursuant to 5 U.S.C. § 5108. However, at its commencement, the new department was authorized only 689 supergrade positions.

We do not believe that § 212(d) of the ESA survived the passage of DEOA.[38]

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[37] The legislative history is of little assistance in construing the language of § 621(d). The conference report does not explain the origin or meaning of the phrase.

The original Senate bill, S. 826, 95th Cong., 1st sess. § 612(b) (1977), used the phrase "under existing law" in the following context:

> In addition to the number of positions which may be placed in grades GS-16, 17, and 18 under section 5332 of title 5, United States Code, *under existing law* or this Act, not to exceed one hundred and fifty positions may be placed in grades GS-16, 17 and 18 to carry out functions under this Act. [Emphasis added.]

> If the phrase were intended to identify additional supergrade positions, S. 826 would have to be read as authorizing at least 125 positions (from FEAA and ESA) beyond the 750 explicitly provided for. Yet it is clear that this accretion in supergrade positions was not intended by the bill. *See* S. Rept. 367, at 92–93 and note 14, *supra*. Rather, the phrase most probably refers to positions already authorized and allocated pursuant to 5 U.S.C. § 5108. *But see* § 7(a) of the FEAA (phrase "under existing law" in context similar to § 621(d) of DEOA appears to refer to other laws authorizing supergrade positions and not merely 5 U.S.C. § 5108).

[38] We are aware that implied repeals of specific statutory provisions are disfavored. *See, United States* v. *United Continental Tuna Corp.*, 425 U.S. 164, 168–69 (1976); *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 133–34 (1974). Although it is the duty of courts to strive to interpret statutory language to further coexistence of two potentially conflicting statutes, *see, Morton* v. *Mancari*, 417 U.S. 535, 551 (1974), we do not believe that the clear intent of Congress should be ignored in order to save an otherwise displaced statutory subsection. Furthermore, DEOA is a reorganization act that supplants a number of earlier statutes in the same field of law. It thus appears more analogous to a statute that substitutes for an earlier statute, *see, Posadas* v. *National City Bank*, 296 U.S. 497, 503 (1936) and *Plains Elec. Generation and Transmission Cooperations, Inc.* v. *Pueblo of Laguana*, 542 F. (2d) 1375 (10th Cir. 1976), than a general statute in one area of law that conflicts with a specific statute in another area of law. *See, Regional Rail Reorganization Act Cases, supra,* and *Morton* v. *Mancari, supra*.

8